Mr. Tom Gardner Executive Director Department of Natural Resources Marjory Stoneman Douglas Building 3900 Commonwealth Boulevard Tallahassee, Florida 32399
Dear Mr. Gardner:
You have asked the following question on behalf of the Board of Trustees of the Internal Improvement Trust Fund:
 Does the Board of Trustees of the Internal Improvement Trust Fund have the authority to promulgate rules establishing a method by which the ordinary high water line shall be determined?
In sum, I am of the opinion that:
 The Board of Trustees possesses sufficient authority to establish a method by which the ordinary high water line shall be determined.
According to your letter, the Board of Trustees of the Internal Improvement Trust Fund (trustees), as part of the settlement of the Peace River litigation, directed staff of the Department of Natural Resources (department) to develop rules regarding the establishment of the ordinary high water line (OHWL). Since then, questions have been raised concerning the authority of the trustees to issue such rules.
The OHWL has been defined as "the point up to which the presence and action of the water is so continuous as to destroy the value of the land for agricultural purposes by preventing the growth of vegetation, constituting what may be termed an ordinary agricultural crop."[1] It is an ambulatory line, shifting in response to long term changes in the water level.[2] The primary indicators of the OHWL have been vegetation, soil and geomorphology.[3] In addition, corrobative evidence such as historical records, old surveys, hydrology, and eyewitnesses, have been used in establishing the OHWL.[4]
The trustees hold title to the state sovereignty lands.[5] The trustees are charged with the "acquisition, administration, management, control, supervision, conservation, protection, and disposition" of lands owned by the state or its agencies.[6] In addition, the trustees are responsible for maintaining an annual inventory of all publicly owned lands and must preserve all records, surveys, maps, and other evidence relating to the title and description of public lands.[7]
Section 253.03(7), F.S., requires the trustees to adopt rules and regulations necessary to carry out the purposes of Ch. 253, F.S. It would appear to be a necessary attribute of the trustees' authority, in holding title to the property and in acquiring or disposing of such property, to establish a method, in accordance with the standards established by the courts, by which the boundaries of state lands are to be determined.[8]
At one time, the statutes specifically provided for the trustees' authority to establish the boundaries of state sovereignty lands. Section 253.151(3), F.S. 1981, provided that the boundary line separating certain state sovereignty lands from those of an upland owner was to be established by, or under the supervision of, the trustees. The statute sought to fix specific and permanent boundaries between the state and private land owners without regard for accretion and reliction.
Section 253.151, F.S., was declared unconstitutional by The Supreme Court of Florida in State v. Florida National Properties, Inc.,[9] as a taking of property without just compensation.[10] The entire statute was held to be unconstitutional since the provisions were, in the Court's opinion, interrelated and unseverable.[11]
The Court stated, however, that the "right of control over sovereignty lands is so inherent in the State that we feel such control can be exercised with or without specific statutory provisions."[12] (e.s.) In exercising such control, the Court recognized that the OHWL "is subject to change from natural causes or with joint consent of the State and private riparian owners."[13] (e.s.)
In light of the above and inasmuch as the right of control over sovereignty lands is vested in the board of trustees, I am of the opinion that until and unless legislatively determined otherwise, the Board of Trustees of the Internal Improvement Trust Fund possesses sufficient authority to establish a method by which the ordinary high water line can be determined.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Tilden v. Smith, 113 So. 708, 712 (Fla. 1927), quoting, Minnetonka Lake Improvement, 58 N.W. 295 (Minn.1894). Tilden also relied on a New Hampshire case, Dow v. Electric Co., 45 A. 350
(N.H.1899), stating:
 The high-water mark on fresh water rivers is not the highest point to which the stream rises in times of freshets, but is "the line which the river impresses upon the soil by covering it for sufficient periods to deprive it of vegetation and to destroy its value for agriculture." See also, Martin v. Busch, 112 So. 274 (Fla. 1927); and Final Report, Star Project 86-043, Development of Procedural Methodology to Enable Florida Land Surveyors to Determine the Ordinary High Water Line Boundary of Sovereign Lands, Ordinary High Water Line Determination: Legal Issues (hereafter the Report), p. 104 (OHWL is a physical mark impressed on the shoreline which shows where the action of water has been so frequent or continuous as to mark a distinct transition between the aquatic and terrestrial environments).
[2] See, State v. Florida National Properties, Inc., 338 So.2d 13
(Fla. 1976); Report at 67.
[3] See, Report, ss. II(B), (C) and (D), and authorities cited therein. And see, Tilden v. Smith, supra; and Martin v. Busch, supra. As noted in the Report at p. 104, Florida's wet low relief landscape "where easily recognized transitions between the aquatic and terrestrial environments are often lacking" have made it difficult to ascertain the OHWL.
[4] Report, ss. II(E) and (F). See generally, Martin v. Busch, supra at 283, stating that "when the duty of determining the line of high-water mark is imposed or assumed, the best evidence attainable and the best methods available should be utilized in determining and establishing the line of true ordinary high-water mark. . . ."
[5] See, s. 11, Art. X, State Const., stating that title to lands under navigable waters within the boundaries of the state, which have not been alienated, is held by the state by virtue of its sovereignty, in trust for all the people. Section 253.03(1)(b), F.S., provides that lands vested in the Board of Trustees of the Internal Improvement Trust Fund shall be deemed to be "[a]ll lands owned by the state by right of its sovereignty; . . . ."
[6] Section 253.03(1), F.S. While the statute lists several exceptions to the board's control over state lands, such exceptions are not pertinent to the instant inquiry.
[7] Sections 253.03(8)(a) and 253.031(1), F.S.
[8] See, State ex rel. Martin v. Michell, 188 So.2d 684 (4 D.C.A.Fla., 1966), cert. discharged, 192 So.2d 281 (Fla. 1966) (if law imposes a duty upon an officer to accomplish a stated governmental purpose, then the law also confers by implication every particular power necessary or proper for the complete exercise or performance of the duty that is not in violation of law or public policy); Peters v. Hansen, 157 So.2d 103 (2 D.C.A.Fla., 1963).
[9] 338 So.2d 13 (Fla. 1976). The statute was subsequently repealed by s. 4, Ch. 83-214, Laws of Florida.
[10] See, s. 9, Art. I, State Const.; and 14 Amend., U.S. Const. 
[11] House Bill 1215 and Senate Bill 326, being considered by the 1988 Legislature, provide for the determination of the current ordinary high water line by the Department of Natural Resources and approval by the Board of Trustees of the Internal Improvement Trust Fund. The bills also specify the standards to be used in making such determinations.
[12] 338 So.2d at 18.
[13] Id. at 19. — JW.